**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

| | |
|---|---|
| RAYMOND G. PERELMAN,<br>        Plaintiff,<br>v.<br>ARLIN ADAMS,<br>        Defendant. | Case No.<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT**

Plaintiff Raymond G. Perelman, by and through his undersigned counsel, submits this Complaint against Defendant Arlin Adams. As his Complaint, Plaintiff Raymond G. Perelman asserts and alleges:

**Parties**

1. Plaintiff Raymond G. Perelman ("Plaintiff") is an adult individual who resides in the State of Florida, residing at 965 North Ocean Boulevard, Palm Beach, Florida. He was a resident and citizen of Florida at the times relevant to the matters stated in this Complaint.

2. Defendant Arlin Adams ("Defendant") is an adult individual and citizen of the Commonwealth of Pennsylvania, residing in Cheltenham, Montgomery County, Pennsylvania. He is counsel to Schnader Harrison Segal & Lewis, LLP, and was a partner in the Schnader firm until recently, and at all times relevant to the matters stated in this Complaint

3. This Court has jurisdiction over the subject matter of the causes of action stated herein pursuant to 15 U.S.C. § 1332, in that this is a civil action in which the plaintiff and

defendant are citizens of different states, wherein the value of the matter in controversy exceeds the sum of seventy-five thousand dollars ($75,000.00), exclusive of interest and costs.

**Background**

4.  In the late 1980s, Plaintiff owned a number of businesses which he operated with his son, Jeffrey Perlman. When Plaintiff was in his seventies, Jeffrey Perelman wanted Plaintiff to retire, allowing Jeffrey Perelman to take over as CEO. Plaintiff did not agree to do this, and Jeffrey Perelman then resigned his position with these companies.

5.  Defendant was, at this time, Plaintiff's attorney, as well as his friend. Defendant would spend several days each year at Plaintiff's home in West Palm Beach, Florida, as Plaintiff's guest.

6.  After discussions with his wife and Defendant, Plaintiff agreed to transfer thirteen subsidiary companies to Jeffrey Perelman ("Transaction") – but only under certain conditions. See Statement of Arlin Adams, attached hereto and marked "Exhibit A." First, the transfer was to have no tax consequences to Plaintiff. Second, half of the stock in the companies was to be transferred to a trust for Plaintiff's granddaughter (and Jeffrey Perelman's daughter) Alison, a trust of which Defendant was to be Trustee. Third, Jeffrey Perelman's wife, Marsha, was to renounce any claim to the companies.

7.  Plaintiff retained Defendant and his firm of Schnader, Harrison, Segal & Lewis ("Schnader") to carry out the transaction.

8.  Defendant clearly understood the above listed conditions, as he incorporated them into the memo attached hereto as "Exhibit A."

9.  Defendant, without the involvement of the Plaintiff, drafted or caused to be drafted all of the paperwork for the transaction at his firm. He was aided by Vickie Waitsman,

who was then an associate at Schnader.  Included in these documents were thirteen stock sale agreements or asset purchase agreements, transferring these companies to Jeffrey Perelman. These agreements clearly state that Jeffrey Perelman was to pay approximately $24 million in a **<u>certified check</u>** to Plaintiff at the closing for this transaction.  See stock purchase agreements, attached hereto as "Exhibit B."  No other method of payment was permitted in the purchase agreements.

10. The closing for the transaction was held at the Philadelphia offices of Schnader. Plaintiff was not present, as he was relying on Defendant, as his attorney, to see that the transaction was properly executed.

11. Jeffrey Perelman took possession of the companies on the date of closing without paying Plaintiff the purchase price as listed in the purchase agreements, and Defendant permitted Jeffrey Perelman to take possession of the companies without paying for the companies.  To this day, Defendant Jeffrey Perelman has never paid for these companies.

12. Additionally, Jeffrey Perelman transferred stock certificates of the companies in question to himself, knowing that he had failed to provide the required consideration.  See Stock Certificates, attached hereto and marked "Exhibit C."  Defendant permitted and aided in the fraudulent transfer of these stock certificates.

13. Following the closing, Defendant drafted a letter to the banks which had held notes against these companies stating that ownership had properly transferred to Jeffrey Perelman when he knew, in fact, that this had not occurred.  A copy of that opinion letter is attached hereto as "Exhibit D."

14. As part of this transaction, Defendant drafted a trust agreement that Plaintiff understood was to give half of the companies to Alison Perelman, who was at the time eight

years old ("Trust").  Plaintiff specifically asked Defendant to serve as the trustee.

15. Unbeknownst to Plaintiff, that trust was never set up.  Instead, Defendant set up a trust for the benefit of Jeffrey Perelman exclusively.  Creation of this trust was a blatant abuse of the authority given to Defendant Arlin Adams, as well as breach of fiduciary duty under the Rules of Professional Conduct.

16. Following the closing, Plaintiff was concerned to discover that Jeffrey Perelman set up a management company to operate the thirteen companies.  This management company was siphoning off the profits of the companies, and keeping those funds out of the trust.  When Plaintiff asked Defendant about this, Defendant assured him that all of Plaintiff's wishes with regard to the transfer of companies had been complied with.  See Letter of Arlin Adams, attached hereto and marked "Exhibit E."

17. All of these transactions occurred without Plaintiff's knowledge.

18. In 2007, following some unusual behavior by Jeffrey Perelman, Plaintiff requested a meeting with Defendant and Vickie Waitsman.  Also present at this meeting was Plaintiff's wife Ruth, Jeffrey Perelman and his wife Marsha.  Plaintiff expressed his concerns and requested copies of all the transfer documents and the trust agreement.  Ms. Waitesman opened the meeting by assuring Plaintiff that all his wishes regarding the transfer had been carried out.

19. However, upon Plaintiff finally receiving these documents, he was shocked and dismayed to discover that his granddaughter (Jeffrey Perelman's daughter) Alison was not specifically provided for in the trust.  From the time of the closing until the time of the meeting, Defendant had insisted that Plaintiff's wishes regarding the trust had been fulfilled – a representation that was untrue.

20. Furthermore, it was only after receiving the purchase agreements in 2010 and other documents relating to the sale of the companies, and conducting an investigation, that Plaintiff became aware that Jeffrey Perelman had taken the companies without ever paying for them.

**Mrs. Perelman's 2010 Will**

21. Plaintiff executed a will in 1990 under the direction, instruction, or with the assistance of Defendant Adams, who signed the will as a witness. See Plaintiff's 1990 Will, attached hereto and marked "Exhibit F."

22. At all times relevant hereto, Plaintiff was married to Mrs. Ruth C. Perelman, who is now deceased.

23. On or about July 18, 1991, Ruth C. Perelman executed a Will with the assistance of Schnader, Harrison, Segal & Lewis. See 1991 Will of Ruth C. Perelman, attached hereto and marked "Exhibit G."

24. On December 11, 2009, Plaintiff filed suit against Schnader, Harrison, Segal & Lewis and Vickie Waitesman for their roles in the 1990 transactions. See Complaint against Schnader, et al., attached hereto and marked "Exhibit H."

25. Mrs. Perelman was likely to be a material witness in the above case.

26. While that case was still active, Defendant Adams had conversations with Ruth C. Perelman regarding making another Will. See Arlin Adams billing records, attached hereto and marked "Exhibit I."

27. Further, Arlin Adams was, at this time, still an adviser to JEP Management, the company formed by Jeffrey Perelman to operate the companies acquired in the 1990 transactions.

28. Defendant Adams directed other Schnader partners and employees to draft a Will and other related testamentary documents for Mrs. Perelman.

29. Defendant Adams reviewed with Ruth C. Perelman the terms she wanted in her Will, including gifts she wanted to make to particular family members, and other bequests.

30. At no point in time did Defendant Adams inform Mrs. Perelman of any possible conflict of interest with representing Mrs. Perelman while still an Adviser to Jeffrey Perelman's companies, or based on his current and/or previous professional relationship with Plaintiff.

31. Mrs. Perelman's 2010 Will removed Plaintiff as trustee and beneficiary of her estate, and replaced Plaintiff with Jeffrey Perelman.

32. Plaintiff first discovered the existence of Mrs. Perelman's 2010 Will when she died on July 31, 2011.

## COUNT I

## BREACH OF CONTRACT

### Plaintiff v. Defendant

33. Complainant hereby incorporates the allegations contained in paragraphs 1 through 32 as though fully set forth herein at length.

34. The Plaintiff contracted with Defendant for legal services as described in greater length above.

35. Pursuant to this agreement Defendant was to carry out the transaction and provide a trust for Allison Perelman.

36. Defendant breached his duty under the Contract by inter alia:

   a. Failing to utilize his best skill, attention, and efforts in carrying out his work and the supervision of attorneys within his firm;

    b. Failing to provide proper supervision of his employees and/or subcontractors;

    c. Failing to perform the work in a proper manner;

    d. Failing to perform the work in accordance with the agreement and specifications of the transaction;

    e. Failing to perform the work in accordance with industry standards and practices; and

    f. Breaching his fiduciary duty to Plaintiff.

  37. As a direct and proximate result of Defendant's breach of contract, the Plaintiff transferred thirteen subsidiary companies to Jeffrey Perelman without ever receiving compensation as instructed by the purchase agreements.

  38. As a direct and proximate result of Defendant's breach of contract, Allison Perelman was not named a beneficiary of the trust.

  39. As a direct and proximate result of Defendant's breach of contract, Plaintiff suffered damages in excess of Twenty Four Million Dollars ($24,000,000.00).

  WHEREFORE, Plaintiff respectfully request that judgment be entered in their favor and against Defendant, and that they be awarded damages against Defendant in an amount in excess of Seventy Five Thousand Dollars ($75,000.00) together with interest, costs, attorneys' fees, and such other relief as the Court deems appropriate.

## COUNT II

## PROFESSIONAL NEGLIGENCE

### Plaintiff v. Defendant

40. The Plaintiff hereby incorporate the allegations contained in paragraphs 1 through 39 as though fully set forth herein at length.

41. Defendant drafted or caused to be drafted all of the purchase agreements for the transaction.

42. Defendant drafted or caused to be drafted the trust for which Allison Perelman was to be named beneficiary.

43. Defendant attended the closing wherein transfer of the stock certificates of the thirteen companies was to take place in exchange for thirteen certified checks totaling twenty four million dollars.

44. Defendant failed to exercise the due care that a reasonable and prudent attorney would have exercised under the circumstances and acted in a negligent manner by, inter alia;

   a. Failing to ensure that the funds to be secured at closing were in fact provided by Jeffrey Perelman in exchange for the transfer of stock certificates of the thirteen companies;

   b. Failing to ensure that Allison Perelman was the named beneficiary of the trust.

   c. Breaching his fiduciary duty;

   d. Negligently and/ or intentionally omitting work;

   e. Failing to exercise control over employees/subcontractors;

   f. Failing to properly instruct employees/subcontractors in accordance with the agreement and the terms of the transaction;

   g. Failing to be familiar with the progress and quality of the work in the transaction.

      h.      Failing to exercise the ordinary care, skill and diligence required of an attorney;

      45.      Defendant gave affirmative assurances to Plaintiff that the services provided would be performed as is consistent with care and skill and in a non-negligent manner.

      46.      Defendant failed to exercise the requisite degree of skill and care required for the transaction.

      47.      As a direct and proximate result of Defendant's negligence, the Plaintiff transferred thirteen subsidiary companies to Jeffrey Perelman without ever receiving compensation as instructed by the purchase agreements.

      48.      As a direct and proximate result of Defendant's negligence, Allison Perelman was not named a beneficiary of the trust.

      49.      As a direct and proximate result of Defendant's negligence, Plaintiff suffered damages in excess of Twenty Four Million Dollars ($24,000,000.00).

WHEREFORE, Plaintiff respectfully request that judgment be entered in their favor and against Defendant, and that they be awarded damages against Defendant in an amount in excess of Seventy Five Thousand Dollars ($75,000.00) together with interest, costs, attorneys' fees, and such other relief as the Court deems appropriate.

## COUNT III

## FRAUDALENT MISREPRESENTATION

### Plaintiff v. Defendant

      50.      Plaintiff hereby incorporate the allegations contained in paragraphs 1 through 49 as though fully set forth herein at length.

      51.      Prior to entering into the agreement and subsequent to, Defendant represented to

Plaintiff that Defendant would draft or caused to be drafted all of the purchase agreements for the transaction consistent with those conditions as detailed in greater length above.  See Exhibit "A."

52. Prior to entering into the agreement and subsequent to, Defendant represented that he would attend and represent Plaintiff's interests at the closing wherein transfer of the stock certificates of the thirteen companies was to take place and ensure the transaction would be in exchange for thirteen certified checks totaling twenty four million dollars.

53. Prior to entering into the agreement and subsequent to, Defendant represented that Plaintiff would be paid by Jeffrey Perelman for the transfer of the stock certificates.

54. Prior to entering into the agreement and subsequent to, Defendant represented Jeffrey Perelman would pay $24 million by certified check to Plaintiff at the closing for this transaction and that no other method of payment was permitted in the purchase agreements.

55. Prior to entering into the agreement Defendant represented he would draft or cause to be drafted a trust agreement naming Alison Perelman, as beneficiary, and that Defendant would serve as the trustee.

56. Prior to entering into the agreement Defendant represented that half of the stock in the companies would be transferred to the trust for Alison Perelman.

57. The representations made by Defendant were false, were known to Defendant to be false when made, were material in nature, and made with the intent to deceive and defraud the Plaintiff and to induce them to retain Defendant and agree to the transaction.

58. Defendant failed to draft the purchase agreements for the transaction in a manner consistent with the Plaintiff's conditions as detailed in greater length above.

59. Defendant failed to ensure Plaintiff was paid by Jeffrey Perelman for the transfer of the stock certificates.

60. Defendant failed to ensure that half of the stock in the companies would be transferred to a trust for Alison Perelman.

61. Defendant failed to draft a trust agreement naming Alison Perelman as beneficiary.

62. Defendant knew Plaintiff had no special knowledge in such matters and would rely on the Defendants' misrepresentation.

63. Plaintiff did, in fact, rely on the Defendants' misrepresentation and was induced thereby to enter into the agreement and induced to move forward with the transaction.

64. As a direct and proximate result of Defendant's fraudulent misrepresentation, the Plaintiff transferred thirteen subsidiary companies to Jeffrey Perelman without ever receiving compensation as instructed by the purchase agreements.

65. As a direct and proximate result of Defendant's fraudulent misrepresentation, Allison Perelman was not named a beneficiary of the trust.

66. As a direct and proximate result of Defendant's fraudulent misrepresentation,, Plaintiff suffered damages in excess of Twenty Four Million Dollars ($24,000,000.00).

WHEREFORE, Plaintiff respectfully request that judgment be entered in their favor and against Defendant, and that they be awarded damages against Defendant in an amount in excess of Seventy Five Thousand Dollars ($75,000.00) together with interest, costs, attorneys' fees, and such other relief as the Court deems appropriate.

## COUNT IV

## FRAUDALENT CONCEALEMENT

### Plaintiff v. Defendant

67. The allegations in paragraphs 1 through 66 are incorporated herein by reference and made a part hereof.

68. Prior to entering into the agreement and subsequent to, Plaintiff inquired if Defendant would draft or caused to be drafted all of the necessary legal instruments for the transaction consistent with those conditions as detailed in greater length above.

69. Prior to entering into the agreement and subsequent to, Plaintiff inquired if Defendant would attend the closing wherein transfer of the stock certificates of the thirteen companies was to take place and ensure the transaction would be in exchange for thirteen certified checks totaling twenty four million dollars.

70. Prior to entering into the agreement and subsequent to, Plaintiff inquired if Plaintiff would be paid by Jeffrey Perelman for the transfer of the stock certificates.

71. Prior to entering into the agreement and subsequent to, Plaintiff inquired if Jeffrey Perelman was to pay $24 million by certified check to Plaintiff at the closing for this transaction and that no other method of payment was permitted in the purchase agreements.

72. Prior to entering into the agreement and subsequent to, Plaintiff inquired if Defendant would draft or cause to be drafted a trust agreement naming Alison Perelman, as beneficiary, and that Defendant would serve as the trustee.

73. Prior to entering into the agreement and subsequent to, Plaintiff inquired if Defendant would transfer half of the stock of the companies would be transferred to the trust.

74. Defendant failed to draft the purchase agreements for the transaction in a manner consistent with the Plaintiff's conditions as detailed in greater length above.

75. Defendant failed to ensure Plaintiff was paid by Jeffrey Perelman for the transfer of the stock certificates.

76. Defendant failed to ensure that half of the stock in the companies would be transferred to a trust for Alison Perelman.

77. Defendant failed to draft a trust agreement naming Alison Perelman, as beneficiary.

78. Defendant knew Plaintiff had no special knowledge in such matters and would rely on the Defendants' misrepresentation.

79. Plaintiff did, in fact, rely on the Defendants' misrepresentation and/or concealments and was induced thereby to enter into the agreement and induced to move forward with the transaction.

80. As a direct and proximate result of Defendant's fraudulent misrepresentation, the Plaintiff transferred thirteen subsidiary companies to Jeffrey Perelman without ever receiving compensation as instructed by the purchase agreements.

81. As a direct and proximate result of Defendant's fraudulent misrepresentation, Allison Perelman was not named a beneficiary of the trust.

82. As a direct and proximate result of Defendant's fraudulent misrepresentation, Plaintiff suffered damages in excess of Twenty Four Million Dollars ($24,000,000.00).

## COUNT V

## FRAUD

### Plaintiff v. Defendant

83. The allegations in paragraphs 1 through 82 are incorporated herein by reference and made a part hereof.

84. Defendant knew he was in a fiduciary and confidential relationship with Complainant.

85. Defendant created an impression that the purchase prices listed in Exhibits "B1" - "B13" were paid on behalf of Defendant Perelman by several entities as listed by the purchase agreements.

86. Defendant knew this to be false and failed to correct and/or failed to attempt to correct this impression.

87. Defendant Adams failed to inform and/or advise Plaintiff with respect to Jeffrey Perelman's breach of the purchase agreements.

88. Defendant Adams failed to inform and/or advise Plaintiff that Allison Perelman was not named the beneficiary of the trust.

89. Unbeknownst to Plaintiff until recently, from the creation of the trust until the present time, Defendant Adams was paid a consulting fee by the thirteen corporations that were the subject of the transfer in connection with which he had acted as counsel.

90. Defendant acted in such a manner with the intent to deceive Plaintiff.

91. Plaintiff relied on the counsel of Defendant and Defendant failed to correct a false impression which he previously created and Defendant knew to be influencing Plaintiff as he stood in a fiduciary and confidential relationship.

92. The forgoing representations and non-disclosures were false when made and Defendant knew or should have known that said representations were false when made.

93. The Plaintiff justifiably relied on the foregoing representations and non-disclosures concerning the condition of the of the work product.

94. Defendant made the false representations with the intention of deceiving the Plaintiff and inducing him into the agreement and the transaction.

95. As a direct and proximate result of Defendant's fraud, the Plaintiff transferred thirteen subsidiary companies to Jeffrey Perelman without ever receiving compensation as instructed by the purchase agreements.

96. As a direct and proximate result of Defendant's fraud, Allison Perelman was not named a beneficiary of the trust.

97. As a direct and proximate result of Defendant's fraud, Plaintiff suffered damages in excess of Twenty Four Million Dollars ($24,000,000.00).

WHEREFORE, Plaintiffs respectfully request that judgment be entered in their favor and against Defendant, and that they be awarded damages against Defendant in an amount in excess of Seventy Five Thousand Dollars ($75,000.00) together with interest, costs, attorneys' fees, and such other relief as the Court deems appropriate.

## COUNT VI

## LEGAL MALPRACTICE

### Plaintiff v. Defendant

98. The allegations in paragraphs 1 through 97 are incorporated herein by reference and made a part hereof.

99. An attorney-client relationship existed between Plaintiff and Defendant with respect to the 1990 transactions, the drafting of Plaintiff's 1990 Will, and Plaintiff and Defendant's ongoing relationship.

100. In this ongoing relationship, Defendant would regularly offer Plaintiff legal advise and counsel.

101. Defendant failed to exercise ordinary skill and care in his representation of Mrs. Perelman, which was against Plaintiff's material interests. Specifically, Defendant had conflicts

of interest between Mr. Perelman, Mrs. Perelman, and Jeffrey Perelman for which he failed to obtain waiver by informed consent.

102. Defendant also failed to obtain informed consent to waive the possible conflict of interest between himself, as a partner of Schnader, and Mrs. Perelman, the wife of Plaintiff who had a pending lawsuit against Schnader in which she was likely to testify as a witness.

103. As a consequence of this breach of professional duty, Plaintiff has been unjustly removed as a beneficiary and trustee of his late wife's estate. Moreover, he has suffered consequential monetary damages, including, but not limited to, costs and expenses incurred to attempt to rectify the consequences of the breach.

WHEREFORE, Plaintiffs respectfully request that judgment be entered in their favor and against Defendant, and that they be awarded damages against Defendant in an amount in excess of Seventy Five Thousand Dollars ($75,000.00) together with interest, costs, attorneys' fees, and such other relief as the Court deems appropriate.

## COUNT VII

## BREACH OF FIDUCIARY DUTY

### Plaintiff v. Defendant

104. The allegations in paragraphs 1 through 103 are incorporated herein by reference and made a part hereof.

105. Defendant was at all times bound to conduct themselves as a fiduciary occupying the highest position of trust and confidence. It was his duty to exercise and maintain the utmost good faith, honesty, integrity, fairness and fidelity.

106. Defendant breached his fiduciary duty by failing to obtain informed consent from Plaintiff waiving any conflicts of interest before drafting a will for his wife which removed him as beneficiary and trustee.

107. Defendant breached his fiduciary duty to Plaintiff by drafting, or causing to be drafted, a will whose execution was against Plaintiff's pecuniary interests.

108. Defendant breached his fiduciary duty to Plaintiff by representing Mrs. Perelman in a matter where her interests were materially adverse to Plaintiff's.

109. As a consequence of this breach of fiduciary duty, Plaintiff has been unjustly removed as a beneficiary and trustee of his late wife's estate. Moreover, he has suffered consequential monetary damages, including, but not limited to, costs and expenses incurred to attempt to rectify the consequences of the breach.

WHEREFORE, Plaintiffs respectfully request that judgment be entered in their favor and against Defendant, and that they be awarded damages against Defendant in an amount in excess of Seventy Five Thousand Dollars ($75,000.00) together with interest, costs, attorneys' fees, and such other relief as the Court deems appropriate.

### Jury Demand

Plaintiff demands a jury trial on all issues to which he is so entitled.

Respectfully submitted this __ day of September 2012.

_____/s/_____
Paul Kunz
paul@bandervisa.com
Fla. Bar. # 0159492
BANDER & ASSOCIATES, P.A.
444 Brickell Avenue, Ste. 300
Miami, FL 33131
Phone: (786) 871.2262
Fax: (786) 924-1230

Andrew C. Eckert, Esquire
Buckley, Brion, McGuire,
 Morris & Sommer, LLP.
118 West Market Street, Suite 300
West Chester, Pa 19382
Phone : 610-436-4400
Fax : 610-436-6179
aeckert@buckleyllp.com
(Pro hac vice motion to be file)